IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | :: |
| | :: CRIMINAL CASE NO. |
| v. | :: 1:17-cr-39-MLB-AJB |
| | :: |
| NATHAN LARON GRISSOM, | :: |
| | :: |
| Defendant. | :: |

**UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION
ON DEFENDANT'S COMPETENCY TO STAND TRIAL**

This matter came before the Court following the Court's orders that Defendant Nathan Laron Grissom ("Grissom" or Defendant) undergo a competency examination pursuant to 18 U.S.C. § 4241 and be hospitalized in an attempt to restore his competency to stand trial. [Docs. 13, 23, 33]. For the following reasons, the undersigned **RECOMMENDS** that Grissom be found competent to stand trial in that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense.

*I.    Background*

Grissom is charged in an indictment with transmitting a threatening communication in interstate commerce, in violation of 18 U.S.C. § 875(c), and impersonating a federal officer, in violation of 18 U.S.C. § 912. [Doc. 2]. The

AO 72A
(Rev.8/82)

Government filed a motion for a mental health evaluation, [Doc. 12], which the Court granted with the stipulation that the evaluation be performed locally. [Doc. 13]. The Court later ordered that Grissom be evaluated for his competency both to stand trial and at the time of the commission of the offenses. [Doc. 19]. An August 7, 2017, forensic evaluation report opined that Grissom possessed some factual understanding but not a rational understanding of the proceedings against him, and that he did not have the capacity to assist legal counsel in his defense, and recommended that an attempt be made to restore his competency through medication. Court Exh. 1 (under seal).[1] The Court granted the Government's motion, [Doc. 22], for restoration treatment. [Doc. 23]. The Court then extended the time needed to attempt to achieve restoration. [Doc. 33].[2]

On August 3, 2018, the Federal Bureau of Prisons, Federal Medical Center, at Butner, N.C., by Forensic Psychologist Evan S. Du Bois, Psy.D., issued a report

---

[1] A second August 7, 2017 report opined that Grissom's mental illness impaired his ability to aprreciate the wrongfulness of his conduct at the time of his actions. Court Exh. 2 (under seal).

[2] A February 9, 2018 evaluation discussed the possibility of forced medication under *Sell v. United States*, 539 U.S. 166 (2003), which requested course of action became moot when Grissom voluntarily agreed to treatment. Court Exh. 3 (under seal).

opining that Grissom's mental disease symptoms are in remission and that he is no longer incompetent to stand trial. Court Exh. 4 (under seal) (hereinafter "the Report"). Based on the Report, Associate Warden A. W. Rupska certified that Grissom's competency has been restored. Court Exh. 5 (under seal). At a hearing before the Court on September 4, 2018, the parties stipulated to the conclusions in the Report and stipulated to Grissom's competency to stand trial. [Doc. 36].

## II.    Facts

According to the Report, covering the period following February 9, 2018, Grissom initially was non-compliant with suggested psychotropic medications but eventually verbally agreed to be medicated on March 21, 2018. Because his thoughts remained delusional and disorganized, his medication was increased on March 26 and April 5, 2018. Report at 2. Thereafter, his improvement was described as "mild," but he continued to experience delusional beliefs, disorganized speech, and some agitation. *Id.* On April 16, Grissom became agitated and aggressive towards Dr. Du Bois, requiring hand restraints and the efforts of three to four staff members before Grissom became compliant. *Id.* at 2-3. Following this incident, Grissom agreed

to an injection of long-acting risperidone.[3,4] He then was reported to have improved organization and ability to engage in conversation with others, even though his grandiose beliefs remained. *Id.* at 3.

On June 12, 2018, Dr. Du Bois reported marked improvement in Defendant's ability to engage in conversation, although potentially grandiose delusions remained. He was able to discuss applying for social security benefits and understood the charges against him and their meaning, as well as the Government's evidence against him and that his conviction could result in prison time. Dr. Du Bois further noted that Grissom did not have as good an understanding of his illness as it related to his delusions, and

---

[3] Risperidone is used to treat the symptoms of schizophrenia (a mental illness that causes disturbed or unusual thinking, loss of interest in life, and strong or inappropriate emotions) in adults and teenagers 13 years of age and older. It is also used to treat episodes of mania (frenzied, abnormally excited, or irritated mood) or mixed episodes (symptoms of mania and depression that happen together) in adults and in teenagers and children 10 years of age and older with bipolar disorder (manic depressive disorder; a disease that causes episodes of depression, episodes of mania, and other abnormal moods). Risperidone is also used to treat behavior problems such as aggression, self-injury, and sudden mood changes in teenagers and children 5 to 16 years of age who have autism (a condition that causes repetitive behavior, difficulty interacting with others, and problems with communication). Risperidone is in a class of medications called atypical antipsychotics. It works by changing the activity of certain natural substances in the brain. U.S. National Library of Medicine, https://medlineplus.gov/druginfo/meds/a694015.html (last visited 11/1/18).

[4] He also was placed on lithium, which was withdrawn after three weeks due to reported side effects. Report at 3.

considered him as minimally receptive to education. *Id.* Dr. Du Bois related that, on June 20, 2018, Grissom described his remaining at FCI Butner as " 'unconstitutional' " and he agreed to take Depakote, a mood stabilizer,[5] and remained on it at least through the date of the Report.

On July 12, 2018, Dr. Du Bois observed that Grissom stated that he was feeling " 'leveled out' " and he denied difficulty with sleep or appetite. He also reported feeling " 'good' " overall and had improved anxiety. Dr. Du Bois described Grissom's participation in his competency restoration group as notably improved over the last several weeks of his hospitalization preceding the Report, and further observed that Grissom was insightful and engaged during the group, responding appropriately to questions, and remaining focused without inserting irrelevant or bizarre information. *Id.*

---

[5] Depakote (valproic acid) is used alone or with other medications to treat certain types of seizures. Valproic acid is also used to treat mania (episodes of frenzied, abnormally excited mood) in people with bipolar disorder (manic-depressive disorder; a disease that causes episodes of depression, episodes of mania, and other abnormal moods). It is also used to prevent migraine headaches but not to relieve headaches that have already begun. Valproic acid is in a class of medications called anticonvulsants. It works by increasing the amount of a certain natural substance in the brain. U.S. National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682412.html (last visited 11/1/18).

Dr. Du Bois assessed Grissom with the following diagnoses from the *Diagnostic and Statistical Manual of Mental Disorders*, *Fifth Edition* ("DSM-5"):

> Schizoaffective disorder, bipolar type, multiple episodes, currently in full remission
> Amphetamine use disorder, unspecified severity, in a controlled environment
> Alcohol use disorder, moderate, in a controlled environment

*Id.*[6] He described the prominent features of Defendant's presentation as disorganized speech, delusional ideation, and elevated energy levels, and recounted examples supporting this conclusion. *Id.* at 4. Dr. Du Bois wrote that prior to his taking the medication consistently, Grissom evidenced high energy and activity, rapid speech and talkativeness, and distractibility. He demonstrated increased goal directed activity in

---

[6] Dr. Du Bois explained that

> Schizoaffective disorder is characterized by periods of major mood disturbance (i.e., major depressive episodes or manic episodes) concurrent with symptoms of schizophrenia. Manic episodes consist of distinct periods of abnormally and persistently elevated or irritable mood and increased activity or energy lasting at least one week. Manic episodes also include three to four of the following symptoms: inflated self-esteem or grandiosity, decreased need for sleep, more talkative than usual, racing thoughts, distractibility, psychomotor agitation, or risk-taking behaviors. Schizophrenia is characterized by at least two of the following: delusions, hallucinations, disorganized speech or behavior, and negative symptoms (i.e., diminished emotional expression or lack of drive or motivation).

Report at 3-4.

written and telephonic communications, and he was rarely observed with idle behavior as is common for individuals in incarceration. He would approach staff members with a thought, question, or complaint, and walk away without concluding the conversation. The Report also repeated observations of Grissom's manic episodes and manic-like behavior as reported by Grissom's wife and father. *Id.* Nonetheless, Dr. Du Bois opined that

> Despite some prior evidence of possible mania, Mr. Grissom's key features of disorganized speech and delusional ideation remained consistently present concurrently and in the absence of any mood symptoms prior to his placement on psychotropic medication. Based on available information, Mr. Grissom has a reported history of behavior that appears affectively driven and is consistent with manic episodes. His histo[r]y has indicated significant impairment in functioning with each of these episodes. Given the presentation of the above symptoms, the diagnosis of schizoaffective disorder, bipolar type appeared more appropriate than schizophrenia or bipolar disorder with psychotic features. During this current hospitalization period, Mr. Grissom has demonstrated marked symptom improvement, such that he does not report any delusional beliefs or present with disorganized speech. Due to this improvement, the specifier of "in full remission" was provided.

*Id.* at 4-5.[7] Dr. Du Bois noted that Grissom has developed insight into his mental disorder, sought assistance and understanding from appropriate resources, and appears

---

[7] Dr. Du Bois also noted that Grissom was unwilling to discuss his substance use in the context of the current evaluation, and thus, "[w]hile his substance use disorder is not directly relevant to the current issue of competency, this is an area relevant to treatment considerations and to risk for recidivism." Report at 5.

motivated to continue receiving treatment following the completion of his current hospitalization. He opined that, given this improved insight and social support, his overall prognosis appears positive, although largely dependent upon his adherence to psychiatric medication. *Id.*

The Report also related that on July 17, 2018, Grissom was administered the Revised Competency Assessment Instrument (RCAI), a semi-structured interview on basic knowledge about the court process. Grissom correctly (1) identified his charges (" 'impeding interstate commerce by telephone threat and falsely representing myself as a Secret Service agent' "); (2) understood the details of the alleged criminal conduct, seriousness of the charges ("'felonies'"), and their possible consequences (" 'Max of 5 years on the threats, 4 years on the false identification' "); (3) defined the term probation and provided appropriate examples of conditions of release, (4) identified available pleas and their definitions, the roles of courtroom participants and types of trials; and (5) described his right against self-incrimination and the adversarial nature of trial. He was able to discuss the likely outcomes in his case, including the evidence against him. While he was somewhat unaware of the evidence against him as he could not recall the offense, he was able to identify the tape of the phone call as evidence, conceding that he had a "'pretty slim'" chance of refuting a recording of his voice. He

8

stated that he would like to plead " 'no contest' " if it were available, and also discussed the potential of pleading not guilty by reason of insanity. He understood the need to plead guilty to obtain a plea bargain, something he identified as a possible outcome in his case. He also had a detailed awareness of the rights he would forfeit by pleading guilty. Moreover, contrary to prior interviews, Grissom was receptive to working with his attorney and indicated he has confidence in his attorney. He described a willingness to work with and listen to his attorney, as well as provide information as requested. He had a clear understanding of appropriate courtroom behavior and was able to comport himself during this interview and other recent contacts. *Id.* Dr. Du Bois noted Grissom's improvement over the course of his hospitalization:

> Overall, Mr. Grissom continued to display an adequate factual understanding of the courtroom proceedings as appeared to be present during the previous evaluation. However, he has demonstrated significant improvement in his ability to relay this information in an organized manner. He is calm and can engage in lengthy discussions of his case without inserting overt delusional beliefs or challenging the very nature of the interview. He is more cooperative and engaging than prior to his being stabilized on psychotropic medication. Lastly, Mr. Grissom acknowledged the improvement he has made and attributed it to his being stabilized on medication, suggesting he would continue to take the medication as his legal proceedings progress.

*Id.* at 6.

9

Dr. Du Bois thus concluded that it was his opinion that, although Grissom has a diagnosis of schizoaffective disorder, a mental disease, his symptoms are presently in remission and no longer render him incompetent to stand trial, with the caveat that his competency is contingent upon his remaining compliant with his current psychotropic medication regimen and changes to it should be carefully considered as they could potentially lead to psychiatric decompensation. *Id.*

### III. *Conclusions of Law*

"The Due Process Clause of the Fifth Amendment prohibits the government from trying a defendant who is incompetent." *United States v. Rahim*, 431 F.3d 753, 759 (11th Cir. 2005) (citing *Pate v. Robinson*, 383 U.S. 375, 378 (1966)). An individual is considered competent to assist in his proceedings when he has the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and he has a rational and factual understanding of the proceedings against him. *United States v. Nickels*, 324 F.3d 1250, 1252 (11th Cir. 2003); *see also Dusky v. United States*, 362 U.S. 402 (1960); 18 U.S.C. § 4241(a), (d), (e) (noting that a court must find a defendant incompetent when a preponderance of the evidence shows that "the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences

of the proceedings against him or to assist properly in his defense"). The following factors are relevant in assessing competency: "a defendant's past medical history, the opinion of psychiatric experts, and the defendant's behavior during trial." *Woodall v. Foti*, 648 F.2d 268, 273 (5th Cir. Unit A, June 16, 1981).[8] The government bears the burden of proving that a defendant is competent to proceed. *United States v. Izquierdo*, 448 F.3d 1269, 1277 & n.7 (11th Cir. 2006) (citing *United States v. Makris*, 535 F.2d 899, 906 (5th Cir. 1976)). The Court concludes that based on the evidence admitted, Defendant is competent to proceed.

First, the Court notes that Defendant behaved appropriately during the competency hearing. Although the hearing was relatively short, he did not engage in any disturbing, obstructive, or distracting behavior in the courtroom. He appeared to be aware of the proceedings and was alert. His interaction with counsel was courteous and helpful.

---

[8] "In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), [the Eleventh Circuit] adopted as binding precedent all cases decided by the Fifth Circuit, including both Units A and B, prior to October 1, 1981." *Georgia Power Co. v. N.L.R.B.*, 484 F.3d 1288, 1290 n.1 (11th Cir. 2007).

Second, the psychiatric opinion of Dr. Du Bois indicates that Defendant is competent to proceed in that he understands the nature and consequences of the proceedings against him and is able to assist properly in his defense.

Third, the medical history before the Court demonstrates that Defendant's mental condition has improved and stabilized and he is asymptomatic since restoration therapy was undertaken as long as he follows his prescribed medication regimen, which the record reflects he has continued to do.

As discussed above, three factors - - Defendant's demeanor during the competency hearing, the medical opinion, and Defendant's medical history - - indicate that Defendant is competent to proceed and is able to assist properly in his defense.

"A trial judge has a continuing, affirmative responsibility to ensure that a defendant is not tried while incompetent." *Maxwell v. Roe*, 113 Fed. Appx. 213, 215 (9th Cir. Oct. 22, 2004). Courts have "acknowledged the dramatic changes that can take place in a defendant's mental state in even a short period of time." *Id.* at 216. As a result, it is unreasonable for a court to rely on a stale competency determination when there is new evidence of incompetency. *Id.* (citing *deKaplany v. Enomoto*, 540 F.2d 975, 980-81 (9th Cir. 1976) (*en banc*)); *cf. Sanchez-Velasco v. Sec'y of Dep't of Corrs.*, 287 F.3d 1015, 1030 (11th Cir. 2002) (holding that state court's competency

determination was presumptively correct where there was no evidence that inmate's mental condition had changed since the competency determination). The Report and evidence that the Court relies upon in this R&R is timely because the Court has been advised that Grissom is still on his medication regimen, is cooperative in detention, will imminently be released to the halfway house if approved by the Bureau of Prisons, and is actively involved with his lawyer in discussions to resolve the case.

Based on the foregoing discussion, the Court concludes that Defendant is presently competent to proceed because he has the ability to consult with his attorney with a reasonable degree of understanding and he has a rational and factual understanding of the nature and the consequences of the proceedings being brought against him. *Cf. United States v. Caraza*, 843 F.2d 432, 437 (11th Cir. 1988) (finding no error in court's competency determination where testimony revealed that the defendant's schizophrenia condition improved while on medication and the defendant cooperated with the defense expert).

## IV. *Conclusion*

The undersigned **CONCLUDES** that Defendant Grissom **IS COMPETENT TO PROCEED**. The Court **RECOMMENDS** that the District Court find by a preponderance of the evidence for the reasons contained in this R&R that based upon

AO 72A
(Rev.8/82)

the uncontradicted evidence, Defendant is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense. 18 U.S.C. § 4241(d).

      **IT IS SO RECOMMENDED**, this the 2d day of November, 2018.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE